## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

MATTHEW S. REMSNYDER, *et al.*

v.           Civil Action No. CCB-19-0492

MBA MORTGAGE SERVICES, INC.

\*\*\*\*\*

### MEMORANDUM

This putative class action concerns an alleged scheme in which officers of the defendant corporation MBA Mortgage Services, Inc. ("MBA") allegedly received illegal kickbacks in exchange for the assignment of residential mortgage loans to non-party All Star Title, Inc. ("All Star"). The plaintiffs[1] are mortgagors who, in their amended complaint, raise claims against MBA for violations of the Real Estate Settlement Practices Act ("RESPA") and the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Now pending is MBA's partial motion to dismiss, which seeks dismissal only of the plaintiffs' RICO claim. (ECF 36). The matter is fully briefed and no oral argument is necessary. *See* Local Rule 105(6) (D. Md. 2021). For the reasons discussed herein, the partial motion to dismiss will be denied.

### BACKGROUND

The plaintiffs in this action are borrowers who had, or still have, a residential mortgage loan originated, or brokered, by MBA. They allege they are victims of an alleged kickback agreement between MBA and All Star spanning more than five years which inflated the price of their real estate settlement services. Under this agreement, MBA was to receive kickbacks laundered through third-party marketing companies in exchange for assigning and referring to All

---

[1] The plaintiffs include Matthew S. Remsnyder, Kimberly I. McMillen, Lucy Strausbaugh, Vernon and Crystal Miller, Bonnie S. Vaughn, Edward and Karen Leech, Jr., Ellen T. Geiling, Ted and Andrea Doederlein, Randall Taylor, and Edward F. and Anna M. Barth.

Star residential mortgage loans for title and settlement services. (ECF 35, Am. Compl. at ¶¶ 23, 27, 32). The kickbacks were allegedly funded by defrauding MBA's borrowers into paying excessive fees for title and settlement services amounting to nearly double what other title companies were charging. (*Id.* at ¶¶ 65, 76). The excessive fees charged by All Star were allegedly used to fund the kickbacks paid to MBA. (*Id.* at ¶ 67-68). The plaintiffs allege that MBA also engaged in mail fraud by reinvesting the proceeds of this scheme to pay for direct mail solicitations. (*Id.* at ¶ 73). All told, the scheme is said to have affected more than 750 borrowers over the course of five years. (*Id.* at ¶ 406).

The plaintiffs filed this action on February 20, 2019, originally asserting claims under RESPA, the Sherman Act, and RICO. (ECF 1). On September 16, 2020, MBA filed a motion to dismiss the RESPA and RICO claims. (ECF 29). In response, the plaintiffs filed an amended complaint on October 16, 2020, raising claims under RESPA and RICO only.[2] MBA countered with a partial motion to dismiss, attacking the sufficiency of the RICO claim. (ECF 36). That motion is now ripe for review.

## STANDARD OF REVIEW

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus,

---

[2] Accordingly, the amended complaint is now the operative complaint and MBA's first motion to dismiss (ECF 29) will be denied as moot. *See Fawzy v. Wauquiez Boats SNC*, 873 F.3d 451, 455 (4th Cir. 2017); *Freckleton v. Target Corp.*, 81 F. Supp. 3d 473, 479 (D. Md. 2015).

while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,'

the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'"

*Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged

in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as

facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a

case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.*,

707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365

(4th Cir. 2012)).

## DISCUSSION

Congress has authorized both civil and criminal enforcement of alleged violations of RICO.

18 U.S.C. § 1964. At issue in this case is RICO's civil provision, which provides a cause of action

to "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]."

*Id.* § 1964(c). The statute prohibits the use of income derived from "a pattern of racketeering

activity" for the "establishment or operation" of "any enterprise" engaged in or affecting interstate

or foreign commerce. *Id.* § 1962(a). To state a RICO claim, a plaintiff must allege (1) conduct; (2)

of an enterprise; (3) through a pattern; (4) of racketeering. *See Morley v. Cohen*, 888 F.2d 1006,

1009 (4th Cir. 1989) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)); *see also*

*Rojas v. Delta Airlines, Inc.*, 425 F. Supp. 3d 524, 536 (D. Md. 2019). MBA argues that the

plaintiffs have failed to adequately allege the second and third elements of a RICO claim. The

court will address each in turn.

## I.      Enterprise Activity

Under the RICO statute, an "enterprise" may be an association by law, such as "any

individual, partnership, corporation, association, or other legal entity" or it may be an association-

3

in-fact, such as "any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Three elements are generally required to allege an enterprise: (1) an ongoing organization; (2) associates functioning as a continuing unit; and (3) the enterprise is an entity "separate and apart" from the pattern of activity in which it engages. *Rojas* at 537; *Proctor v. Metro. Money Store Corp.*, 645 F. Supp. 2d 464, 477–78 (D. Md. 2009). An association-in-fact enterprise exists when three structural features are present: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009).

Far from an issue of first impression, this case features allegations very similar to those in several other cases in which judges in this district have issued rulings on motions to dismiss. *See, e.g., Somerville v. West Town Bank & Trust*, No. PJM-19-140, 2019 WL 6131288 (D. Md. Nov. 19, 2019); *Donaldson v. Primary Residential Mortg., Inc.*, No. ELH-19-1175, 2020 WL 3184089 (D. Md. June 12, 2020); *Kadow v. First Federal Bank*, No. PWG-19-566, 2020 WL 5230560 (D. Md. Sept. 2, 2020); *Ekstrom v. Congressional Bank*, No. ELH-20-1501, 2020 WL 6565251 (D. Md. Nov. 9, 2020); *Walls v. Sierra Pac. Mortg. Co., Inc.*, No. GLR-19-595, 2021 WL 252544 (D. Md. Jan. 26, 2021); *Wilson v. Eagle National Bank*, No. TDC-20-1344, 2021 WL 1238576 (D. Md. Apr. 2, 2021); *Brasko v. Howard Bank*, No. SAG-20-3489, 2021 WL 1662464 (D. Md. Apr. 27, 2021); and *Dye v. MLD Mortg., Inc.*, No. ELH-19-3304 (D. Md. July 16, 2021).

The allegations made by the plaintiffs in this case—as well as the arguments made in the defendant's motion to dismiss—are nearly identical to those made in *Ekstrom*. In that case, the defendant challenged the plaintiffs' RICO claims, arguing, among other things, that they did not

4

adequately plead the existence of an enterprise. *See* 2020 WL 6565251, at *16.[3] The court noted

that the plaintiffs alleged the existence of a bilateral enterprise in which, "[f]or a continuous period

of at least eighteen months," the defendant American Bank and All Star "associate[d] and

commit[ed]" predicate acts "for the common purpose of defrauding borrowers into paying higher

and fixed prices for title and settlement services." *Id.* at *20. Likewise, here, the plaintiffs allege

that over a period of more than five years, (*see* ECF 25 at ¶¶ 30, 35, 37–38, 400), MBA and All

Star created an enterprise which committed mail fraud and wire fraud for the common purpose of

defrauding borrowers into paying excessive fees for title and settlement services, (*see id.* at ¶¶ 29,

32, 60–61, 400–01).

And in other cases involving allegations of similar schemes, other judges of this court have

allowed well-pled RICO claims asserting a bilateral association-in-fact enterprise to proceed to

discovery. *Compare Somerville*, 2019 WL 6131288, at *4-5 (denying motion to dismiss RICO

claim based on allegations that the defendant perpetrated a scheme with All Star to charge

borrowers above-market rates for settlement services in exchange for kickbacks), *Walls*, 2021 WL

252544, at *7 (on motion for reconsideration, allowing to proceed to discovery a RICO claim

based on allegations that All Star designed and executed a scheme to defraud, which the defendant

participated in), *and Brasko*, 2021 WL 1662464, at *7 (denying motion to dismiss RICO claim

based on allegations that the defendant and All Star associated for the common purpose of

defrauding borrowers, which was supported by factual allegations detailing the payment, receipt,

and acceptance of illegal kickbacks), *with Donaldson*, 2020 WL 3184089, at *26 (dismissing

---

[3] Unpublished opinions are cited not for their precedential value but for the soundness of their reasoning.

RICO claim alleging a hub-and-spoke enterprise as "rimless" due to lack of allegations connecting the spokes), *and Kadow*, 2020 WL 5230560, at *10 (same).[4]

In light of this precedent, MBA's arguments are unpersuasive. First, it argues that the plaintiffs failed to allege any facts which would indicate a definite organization or structure to the relationship between MBA and All Star outside of the ordinary commercial context. Not so. The plaintiffs allege that the scheme involved the association of MBA and All Star over more than five years, from 2009 to 2015, (*see* ECF 25 at ¶¶ 30, 35, 37–38, 400), and that MBA's president Mike Betley coordinated with, among others, Rob Selznick, a former MBA loan officer who left MBA to work at All Star in 2009, to engage in the scheme, defraud borrowers, and launder the proceeds through third parties, (*see id.* at ¶¶ 29, 32–33).

Next, MBA argues that it was independently pursuing its own goal of acquiring more mortgage business while All Star was independently pursuing more title business such that the enterprise lacked any definite structure outside of their ordinary business relationship. This assertion of fact is contrary to the allegations in the complaint, which states that MBA and All Star

---

[4] MBA argues that *Kadow* rejected the plaintiffs' "bilateral enterprise" theory. That is not entirely accurate. While the RICO claim did not survive a motion to dismiss in *Kadow*, the problem with the "enterprise" prong was that the plaintiffs did not actually plead a bilateral association-in-fact enterprise; rather, they devoted "nearly 300 paragraphs" of their complaint to a discussion of "other Participating Lenders" and only in response to the motion to dismiss did they "ask the Court to find that the alleged agreement between [the defendant] and All Star on its own constitutes a RICO conspiracy." 2020 WL 5230560, at *11. The court therefore concluded that because "all of the Participating Lenders are involved, the RICO claim fails as a rimless hub and spoke conspiracy"— but noted also that "if just [the defendant] and All Star are involved, the RICO claim fails as an 'ordinary business contract or fraud dispute[].'" *Id.* Whether the plaintiffs' allegations in this case constitute an "ordinary business contract or fraud dispute" goes not to whether an enterprise was adequately pled, but whether a sufficient pattern of racketeering activity was alleged. *See Flip Mortg. Corp. v. McElhone*, 841 F.2d 531, 538 (4th Cir. 1988) (noting, in the context of evaluating whether acts alleged constitute a pattern of racketeering activity, that the Fourth Circuit "will not lightly permit ordinary business contract or fraud disputes to be transformed into federal RICO claims.").

engaged in a scheme to defraud their clients by overcharging for settlement services. (*See id.* at ¶¶ 32, 60–62, 65–66, 400–01). These allegations—especially when supported by the specific factual allegations in the complaint—are sufficient as a matter of law to satisfy the enterprise requirement. *See Mitchell Tracey v. First American Title Ins. Co.*, 935 F. Supp. 2d 826, 844 (D. Md. 2013) (deliberately and unlawfully overcharging for title insurance is not an act in the ordinary course of business).[5] At most, MBA's arguments raise factual disputes which are not appropriately resolved at this stage of proceedings. Therefore, the plaintiffs have adequately pled the "enterprise" element of a civil RICO claim.

## II.   Pattern of Racketeering

To establish a "pattern" of racketeering activity under the RICO statute, a plaintiff must allege (1) a minimum of two acts of racketeering activity occurring within ten years, (2) which are related, and (3) which amount to or pose a threat of continued criminal activity. *Ekstrom*, 2020 WL 6565251, at \*18; *see also US Airline Pilots Ass'n v. Awappa*, LLC, 615 F.3d 312, 318 (4th Cir. 2010) (a plaintiff must show "continuity plus relationship"). "Acts are related if they have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise

---

[5] The two cases MBA cites are distinguishable. In *Peters v. Aetna, Inc.*, No. 1:15-cv-00109-MR, 2016 WL 4547151 (W.D.N.C. Aug. 31, 2016) the plaintiffs alleged in conclusory fashion that the enterprise "operated together in a coordinated manner in furtherance of a common purpose" but did not allege "any facts demonstrating" this coordination. *Id.* at \*9. In this case, though, the plaintiffs' allegations are studded with quotations from email correspondence between officers of MBA and All Star showing such coordination to defraud, which belies any inference that MBA and All Star were engaged in an ordinary commercial relationship. (*See, e.g.*, ECF 25 at ¶¶ 59–61, 65, 68, 82). And in *United Food and Comm. Workers Unions and Employers Midwest Health Ben. Fund v. Walgreen Co.*, 719 F.3d 849 (7th Cir. 2013) the complaint was insufficient because it did not contain any allegations that would reveal how the actions at issue were "undertaken on behalf of the *enterprise*" as opposed to on behalf of the companies in their individual capacities to advance their distinct self-interests. *Id.* at 854–55. But in this case, the plaintiffs allege that the proceeds of the scheme were reinvested into the enterprise itself to purchase more direct mail and perpetuate the existence of the scheme over time. (*See, e.g.*, ECF 25 at ¶¶ 85–86, 89–90, 96, 404).

are interrelated by distinguishing characteristics and are not isolated events." *Ekstrom*, 2020 WL 6565251, at \*18. "The Fourth Circuit has adopted a flexible approach to the continuity requirement," and courts are to consider the criminal dimension and degree of alleged misconduct in making their determination. *Id.* at \*19. At the same time, the Fourth Circuit has cautioned that it will not "lightly permit ordinary business contract or fraud disputes to be transformed into federal RICO claims," *Flip Mortg. Corp. v. McElhone*, 841 F.2d 531, 538 (4th Cir. 1988), as RICO liability is reserved for activities "whose scope and persistence pose a special threat to social well-being," *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 549 (4th Cir. 2001).

In this case, MBA argues that though the plaintiffs allege over 500,000 predicate acts of mail fraud, those predicate acts consist of mailing the same solicitation, such that there is only a single scheme to defraud. This, they contend, is insufficient to establish a pattern. But the Fourth Circuit is clear that continuity need not be shown only by proof of multiple schemes. *Morley v. Cohen*, 888 F.2d 1006, 1010 (4th Cir. 1989) (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 109 S. Ct. 2893 (1989)). Further, the cases cited by MBA in support of its position are factually inapplicable, and many also predate the Supreme Court's decision in *H.J. Inc.* and the Fourth Circuit's decision in *Morley. See Flip Mortg. Corp.*, 841 F.2d at 538 (single scheme perpetrated against a single victim by means of failing to abide by terms of a contract); *Int'l Data Bank, Ltd. v. Zepkin*, 812 F2d 149, 150, 154-55 (4th Cir. 1987) (single scheme involved violations of securities laws in a prospectus sent to only ten investors); *HMK Corp. v. Waley*, 828 F.2d 1071, 1075 (4th Cir. 1987) (scheme was a typical "dogfight between developers" that could not, in the mixed commercial and political context of development, be transformed into a RICO claim just because multiple government agencies must sign off on permits); *E. Publ'g and Advert., Inc. v. Chesapeake Publ'g and Advert., Inc.*, 831 F.2d 488, 492 (4th Cir. 1987) (affirming dismissal of

8

RICO claim based on a single, non-recurring scheme to defraud a single entity in a narrow business context), *vacated*, 492 U.S. 913 (1989), *affirmed on remand*, 895 F.2d 971 (4th Cir. 1990) (alleged pattern lasted only three months with no threat of continuity thereafter).

In this case, the plaintiffs allege that the scheme between MBA and All Star harmed borrowers holding more than 750 loans in a scheme perpetrated over five years and involving mail fraud in states across the nation. (*See* ECF 25 at ¶¶ 23, 72, 80, 86, 90, 96, 100, 406). These allegations go beyond the kind of narrow or isolated schemes which are insufficient to establish a pattern of racketeering activity and are instead similar to the allegations which passed muster in *Ekstrom*, *Somerville*, and *Brasko*. *See Ekstrom*, 2020 WL 6565251, at *23 ("plaintiffs allege a fraudulent scheme involving at least two companies and five bank branches over at least 18 months that allegedly affected over 800 borrowers' loans in 30 states"); *Somerville*, 2019 WL 6131288, at *5 ("plaintiffs have alleged in detail a fraudulent scheme involving the conduct of multiple companies and at least six bank branches over the course of five years that . . . affected over 2,000 borrowers in multiple states"); *Brasko*, 2021 WL 1662464, at *6 (allegations of a "huge volume of mailings soliciting new borrowers across the country, as well as the time period over which these mailings were sent" elevates the RICO claim above "garden-variety fraud" to a "more serious scope of activity"). Such long-running fraudulent conduct has been said to "pose a special threat to social well-being," *Parker*, 247 F.3d at 549, by eroding "trust in the country's banking and home-ownership systems," *Somerville*, 2019 WL 6131288, at *5. Thus, the plaintiffs have satisfied the "pattern" requirement of a civil RICO claim.

## CONCLUSION

For the reasons described herein, MBA's motion will be denied. A separate order follows.

9

_____ 9/9/21            _____ CCB
Date

Catherine C. Blake
United States District Judge