IN THE UNTED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

| | | |
|---|---|---|
| MATTHEW M. REMSNYDER, *et al.* | * | |
| Plaintiffs | * | |
| v. | * | Civil Action No. 1:19-cv-00492-CCB |
| MBA MORTGAGE SERVICES, INC. | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANTS' MEMORANDUM IN RESPONSE
TO MOTION FOR CLASS CERTIFICATION**

Defendant MBA Mortgage Services, Inc. ("MBA"), by its undersigned counsel, submits this Memorandum in response to Plaintiffs' Motion for Class Certification ("Motion," ECF Doc. 54).

**INTRODUCTION**

Plaintiffs' in their Motion seek certification of an overly broad and overpopulated class of 754 mortgage loan borrowers from 2009 to 2015, the majority of whom clearly do not have a viable claim against MBA. While MBA does not oppose certification of an appropriate class in this case pursuant to Fed. R. Civ. P. 23, MBA opposes certification of the overbroad "RESPA Class" and "RICO Class" defined in the Complaint and the overbroad "MBA Class" defined in the Motion, which includes two "RESPA and RICO Subclasses."[1] Specifically, Plaintiffs in their

---

[1] Plaintiffs in their Amended Complaint define the putative "RESPA Class" as follows:

> All individuals in the United States who were borrowers on a federally related mortgage loan (as defined under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2602) originated or brokered by MBA Mortgage Service, Inc. for which All Star Title, Inc. provided a settlement service, as identified in Section 1100 on the borrower's HUD-1, between July 1, 2009 and December 31, 2015. Exempted

Motion seek certification of the following "MBA Class," which MBA will treat as the proposed class for which Plaintiffs now seek certification:

> All individuals in the United States who were borrowers on a federally related mortgage loan originated or brokered by MBA Mortgage Service, Inc. for which All Star Title, Inc., provided a settlement service, as identified in Section 1100 on the borrower's HUD-1, between July 1, 2009 and December 31, 2015. Exempted from this class is any person who, during the period of July 1, 2009 through December 31, 2015, was an employee, officer, member and/or agent of MBA Mortgage Services, Inc. or All Star Title, Inc.; any judicial officer who handles this case, and he immediate family members of such judicial officer(s).

Motion, Supporting Memo (ECF 54-1) at 21. Plaintiffs also offer a "RESPA Subclass" and a "RICO Subclass" as follows:

> The RESPA Subclass:
>
> The RESPA Subclass is comprised of all members of the MBA Class who were borrowers on a federally related mortgage loans [sic] (as defined under the Real Estate Settlement Procedures Act, 12 U.S.C. 2602)
>
> The RICO Subclass:
>
> from this class is any person who, during the period of July 1, 2009 through December 31, 2015, was an employee, officer, member and/or agent of MBA Mortgage Services, Inc. or All Star Title, Inc.

Amended Complaint at ¶ 387.

> Plaintiffs define the putative "RICO Class" as:
>
> All individuals in the United States who were borrowers on a refinance, reverse mortgage, or other mortgage loan originated or brokered by MBA Mortgage Services, Inc., for which All Star Title, Inc., provided a settlement service, as identified in Section 1100 on the borrower's HUD-1, between July 1, 2009 and December 31, 2017. Exempted from this class is any person who, during the period of July 1, 2009 through December 31, 2017, was an employee, officer, member and/or agent of MBA Mortgage Services, Inc. or All Star Title, Inc.

*Id.* at ¶ 405. For purposes of responding to the Motion, MBA will address the MBA Class as defined in the Motion as Plaintiffs' proposed class definition for which they seek certification.

The RICO Subclass is comprised of all members of the MBA class [*sic*].

*Id.*

The fundamental flaw in this class definition is that it assumes merely by virtue of the putative class member having done business with MBA and All Star Title, Inc. ("All Star") that the putative class member incurred actual damages. Rather, of the 754 putative class members that Plaintiffs have identified,[2] 456 of them received lender credits greater than or equal to All Star's title and closing charges. Those individuals incurred no losses and therefore cannot recover damages in this case.

An additional 41 borrowers cannot be included in the putative class either because they made purchases in which MBA played no role in the selection by the customer of the settlement agent for closing or because no HUD-1 has been located.

Finally, 20 putative class members identified by Plaintiffs are expressly excluded from the class either because their loans never closed or they are exempted employees of MBA.

Thus, while MBA does not dispute that Plaintiffs have met their burden for certifying a class under FED. R. CIV. P. 23, MBA vigorously disputes Plaintiffs' overly broad definition of the MBA Class. If accurately defined to include only those borrowers who ***may*** have a claim against MBA, the size of the class in this case is about 237 people, not 754. As discussed below, the Court therefore should redefine the MBA Class expressly to exclude those individuals who clearly do not have a viable claim against MBA. This is not say that the remaining 237 putative class members in fact do have viable claims against MBA, but rather that they ***may*** have claims against MBA, subject to sufficient proof at trial.

---

[2]   Plaintiffs in their Motion and Supporting Memo identify the putative class size as 755 borrowers; however, the correct number is 754. Plaintiffs double-counted one borrower.

**FACTUAL BACKGROUND**

In this putative class action, the named Plaintiffs/borrowers each closed on a residential mortgage loan between 2009 and 2015. For each of the subject loans, MBA served as the lender and All Star (which is not a party to this case) served as the closing/settlement services provider. In their 92-page Amended Complaint, Plaintiffs allege that MBA received kickbacks from All Star for each of the putative class member loan closings in exchange for referring those borrowers to All Star for settlement services for each of the mortgage loans. Plaintiffs further allege that these kickbacks were in the form of payments by All Star to third-party marketing companies that provided marketing services to MBA.

Plaintiffs also contend that MBA's activities were a part of a larger scheme by All Star that involved other unnamed mortgage lenders. Plaintiffs allege that All Star overcharged what Plaintiffs call "supra-competitive" pricing for title and settlement services associated with the borrowers' loans. This case is but one of a number of essentially identical cases filed by Plaintiffs' counsel in this District against a number of lenders involving All Star as the common settlement services provider.

As noted above, Plaintiffs allege that the conduct discussed above violated both the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601, *et seq.*, and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq*. MBA denies that it violated RESPA and/or RICO in connection with the putative class members' loans.

The money paid by All Star in connection with MBA's marketing was co-marketing, which is a protected activity under RESPA's safe harbor provisions. 12 U.S.C. § 2607(c)(2). The safe harbor provision provides that "[n]othing in this section shall be construed as prohibiting . . . the payment to any person of a bona fide salary or compensation . . . for goods or facilities actually

furnished or for services actually performed." Here, All Star's payment to third parties was for marketing goods and services actually furnished and performed. A referral tied to a co-marketing agreement is not a RESPA violation. *See PHH Corp. v. Consumer Fin. Prot. Bureau,* 839 F.3d 1, 42-43 (D.C. Cir. 2016), *reinstated in relevant part and rev'd on other grounds,* 881 F.3d 75.

To support their class action claims against MBA, Plaintiffs allege that MBA and All Star were not engaged in co-marketing, but rather that All Star's contribution to the cost of marketing materials was a "Kickback Agreement," under which All Star agreed to pay MBA's marketing expenses in exchange for referring mortgage loans to All Star for settlement. According to Plaintiffs, to fund the referral scheme, All Star recouped what it paid towards marketing by overcharging borrowers for the settlement costs.

On the contrary, there was no benefit to MBA to agreeing to purportedly inflated settlement fees under the alleged Kickback Agreement because, for at least 456 of the 754 loans at issue, ***MBA paid all of the customer's closing costs through lender credits***. Ex. 1 (Michael Betley Aff.) at ¶¶ 5, 6, 9. These 456 Borrowers paid nothing to close their loans. As a result, rather than being incentivized to increase the settlement charges, MBA was motivated to negotiate the lowest settlement charges possible, because ***MBA*** was the entity paying the settlement charges. Furthermore, every borrower for whom MBA originated a loan was advised in writing that he or she was free to select the settlement agent of his or her choosing. Borrowers were not required to use All Star as a settlement agent.

## ARGUMENT

**I.     Standard of Review**

It is well-settled that Plaintiffs bear the burden of proving entitlement to class certification under Rule 23.  *Windham v. American Brands, Inc.*, 565 F.2d 59, 65-66 (4th Cir. 1977).  "To determine whether the party seeking certification has carried its burden, a district court may need to 'probe behind the pleadings before coming to rest on the certification question.'" *EQT Production Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014) (quoting *Comcast Corp v. Behrend*, 569 U.S. 27, 33 (2013)).  "It is the plaintiffs' burden to demonstrate compliance with Rule 23, but the district court has an independent obligation to perform a 'rigorous analysis' to ensure that all of the prerequisites have been satisfied."  *EQT*, 764 F.3d at 358.

**II.    The Court Cannot Certify a Class That Is Overly Broadly Defined.**

"Defining the class is of critical importance because it identifies the persons (1) entitled to relief, (2) bound by a final judgment, and (3) entitled under Rule 23(c)(2) to the 'best notice practicable' in a Rule 23(b)(3) action."  1 William B. Robsenstein, *et al*., Newberg on Class Actions § 3.1 & n. 6 (5th ed. 2011).  Because it is so critically important, "[a] court should deny class certification where the class definitions are overly broad, amorphous, and vague, or where the number of individualized determinations required to determine class membership becomes too administratively difficult."  *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 269 (S.D. Fla. 2003).

Moreover, even for federal statutory claims like those Plaintiffs are asserting here under RESPA and RICO, standing, and more particularly, an injury in fact, "is constitutional requirement."  *Sopkeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  "It is settled that Congress cannot erase Article III's standing requirement by statutorily granting the right to sue to a plaintiff who

would not otherwise have standing." *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997). Merely having closed a mortgage loan through MBA using All Star for settlement services does not give one standing to pursue a claim against MBA. Only if the putative class member was ***injured*** – and, more specifically, lost money – as a result of borrowing from MBA and using All Star for settlement services does the putative member even arguably have standing in this case. *See Behr v. The Creig Northrop Team, P.C.*, 953 F.3d 244, 254 (4th Cir. 2020) (In order to establish "a concrete injury under RESPA," a civil plaintiff must show that he or she paid excessive settlement costs, "the harm that Congress enacted § 2607(a) of RESPA to prevent.")[3]

"In addition to the explicit requirements listed in Rule 23, the Fourth Circuit has recognized that Rule 23 "contains an implicit threshold requirement that the members of a proposed class be 'readily identifiable.'" *In re Marriott Int'l, Inc. Consumer Data Security Breach Litig.*, 341 F.R.D. 128, 139 (D. Md. 2022) (quoting *EQT*, 764 F.3d at 358). "This is commonly referred to as the "ascertainability" requirement." *Id.*

Further implicit in the acertainability requirement is the requirement that the proposed class not be overly broad. A class definition is overly broad if it includes putative class members who lack Article III standing. "Every class member must have Article III standing in order to recover individual damages." *TransUnion LLC v. Ramirez*, ___ U.S. ___, 141 S. Ct. 2190, 2208, 210 L. Ed. 2d 568 (2021). While Plaintiffs need not demonstrate that every class member has standing at the class certification stage, the Court cannot certify a class that includes "a large number of uninjured persons." *Krakauer v. Dish Network LLC*, 925 F.3d 643, 657–58 (4th Cir. 2019) (affirming class certification when satisfied that the class did not include "a large number of

---

[3]   As Plaintiffs' own Motion appears to concede, RICO similarly requires that a plaintiff demonstrate an actual loss. *See* Motion, Supporting Memo (ECF Doc. 54-1) at 32-33 (and cases cited therein).

uninjured persons").

Plaintiffs are seeking in this case to certify a Rule 23(b)(3) class. Motion, Supporting Memo (ECF 54-1) at 22-23. Rule 23(b) requires among other things that "questions of law of fact common to class members predominate over any questions affecting only individual members." FED. R. CIV. P. 23(b). This is more commonly known as the predominance requirement. Certifying a class defined to include a significant number of uninjured putative class members also runs afoul of Rule 23's predominance requirement. *Marriott*, 341 F.R.D. at 142. That is, the proposed class as defined must be "sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

In *Marriott*, Judge Grimm in a thoroughly reasoned opinion found that the proposed classes as defined by the plaintiffs "likely include[d]" many individuals who "d[id] not suffer any economic loss." 341 F.R.D at 142. Accordingly, Judge Grimm concluded that the "predominance analysis shows that the aforementioned proposed classes are overbroad on the issue of standing." *Id.* As he further noted, the appropriate remedy in such cases is not to deny class certification outright, but rather to redefine the class to exclude those putative class members who lack standing, which is in fact what Judge Grimm did in that case. *Id.* at 143. The same analysis and remedy apply equally here.

### III. Plaintiffs' Proposed Class Definition Is Overly Broad and Includes Individuals Who Lack Standing to Sue MBA.

Plaintiffs' Schedule A identifying the putative class members in this case will be filed under seal upon Court approval as Exhibit 2. Defendant's Revised Schedule A, which reflects MBA's analysis of Plaintiffs' Schedule A identifying those customers who should not be included in the putative class similarly will be filed under seal upon Court approval as Exhibit 3. That analysis demonstrates that:

8

(1) For the 456 loans identified in red, MBA provided each customer with a lender credit equal to or exceeding All Star's title and closing charges. Those borrowers therefore suffered no injury or monetary loss and thus lack standing to maintain a claim against MBA.

(2) For the 17 loans identified in yellow, the loans never went to closing. Those borrowers therefore also suffered no injury and lack standing here.

(3) For the three loans identified in orange, the loans were by MBA to its employees and therefore are expressly exempt Plaintiffs' own defined classes.

(4) For the 28 transactions identified in green, these were purchase transactions in which MBA played no role in the customer's selection of the settlement agent for closing. Realtors in such transactions generally refer their customers to the closing agents.

(5) For the 13 loans identified in blue, no HUD-1 has been identified and therefore no determination can be made as to the borrowers' inclusion in the putative class.

Ex. 3; *see also* Ex. 1 (Michael Betley Aff.) at ¶¶ 3-7; Ex. 4 (Meredith Storm Aff.) at ¶¶ 3-6.

Because the putative class members discussed above suffered no actual injury as a result of any act or omission of MBA, Plaintiffs' "proposed classes are overbroad on the issue of standing." *Marriott*, 341 F.R.D at 142. The appropriate remedy therefore is to redefine the MBA Class to exclude these individuals. *Id.* at 143.

For the remaining 237 customers, it is currently unknown which of those customers independently selected All Star as their closing agent, as opposed to MBA recommending All Star for closing services. *See* Ex. 4 at ¶ 7. For class certification purposes only, MBA concedes that these 238 individuals may be included in the proposed RESPA and RICO classes (as properly redefined by the Court).

**IV.     The Court Can and Should Redefine the MBA Class to Exclude Individuals Who Lack Standing or Otherwise Have No Claim Against MBA.**

As discussed above, the Court need not simply accept Plaintiffs' proposed class definition. The Court has the inherent power under Rule 23 to redefine an overly broad class that includes a significant number of putative members who lack standing in order to fashion one that satisfies Rule 23's predominance requirement. *Marriott*, 341 F.R.D at 142-43.

While MBA reiterates that it disputes ultimate liability in this case under RESPA and RICO, for class certification purposes only, MBA concedes that the 237 individuals who ***may*** have a claim against MBA are putative members of the MBA Class. However, that proposed class must be redefined to exclude those individuals identified in Exhibit 3 who clearly may not maintain an action against MBA. MBA therefore proposes the following redefinition of Plaintiffs' proposed MBA Class:

> Redefined MBA Class
>
> All individuals in the United States who ~~were borrowers on~~ <u>closed and incurred a monetary loss (as reflected in the borrowers' HUD-1) on</u> a federally related mortgage loan originated or brokered by MBA Mortgage Service, Inc. for which All Star Title, Inc., provided a settlement service, as identified in Section 1100 on the borrower's HUD-1, <u>and for which MBA Mortgage Service, Inc. was involved in the customer's selection of the settlement agent for closing</u>, between July 1, 2009 and December 31, 2015. Exempted from this class is any person who, during the period of July 1, 2009 through December 31, 2015, was an employee, officer, member and/or agent of MBA Mortgage Services, Inc. or All Star Title, Inc.; any judicial officer who handles this case, and he immediate family members of such judicial officer(s).[4]

This proposed MBA Class as redefined above are ascertainable and satisfy Rule 23's predominance test, as set forth by Judge Grimm in *Marriott*.

---

[4]     The strikethrough text reflects language deleted in the Redefined MBA Class and the underlined text reflects language added thereto.

## CONCLUSION

For the reasons stated above, the Court should certify the MBA Class only as redefined above.

Respectfully submitted,

*/s/Mark D. Maneche*
Steven A. Allen (Federal Bar No. 00607)
Margaret M. McKee (Federal Bar No. 03588)
Mark D. Maneche (Federal Bar No. 23368)
Pessin Katz Law, P.A.
901 Dulaney Valley Road, Suite 500
Towson, MD 21204
410-339-6769
410-832-5602 (fax)
sallen@pklaw.com
mmckee@pklaw.com

***Counsel for Defendant***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of October, 2022, a copy of the foregoing was served via the Court's ECF system on:

Timothy F. Maloney, Esquire
Veronica B. Nannis, Esquire
Megan A. Benevento, Esquire
Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770

Michael Paul Smith, Esquire
Melissa L. English, Esquire
Sarah A. Zadrozny, Esquire
Smith, Gildea & Schmidt, LLC
600 Washington Avenue, Suite 200
Towson, MD 21204

*Counsel for Plaintiffs*

*/s/ Mark D. Maneche*
Mark D. Maneche
