IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MATTHEW S. REMSNYDER, *et al.*, <br><br> v. <br><br> MBA MORTGAGE SERVICES, INC. | Civil Action No. CCB-19-492 |

### MEMORANDUM

This dispute involves a scheme in which officers of the defendant MBA Mortgage Services, Inc. ("MBA") allegedly received illegal kickbacks in exchange for assigning residential mortgage loans to non-party All Star Title, Inc. ("All Star"). The named plaintiffs[1] are mortgagors who assert that MBA violated the Real Estate Settlement Practices Act ("RESPA") and the Racketeer Influenced and Corrupt Organizations Act ("RICO").

Now pending is the plaintiffs' motion for class certification. *See* Pls.' Mot. for Class Cert., ECF 54. The matter is fully briefed. *See* Def.'s Resp., ECF 59; Pls.' Reply, ECF 61. No oral argument is necessary. *See* Local Rule 105(6). For the reasons discussed here, the court will grant the plaintiffs' motion for class certification.

### BACKGROUND

The plaintiffs in this action are borrowers on residential mortgage loans originated or brokered by MBA. Am. Compl. ¶ 1, ECF 35. They allege they are victims of a kickback agreement between MBA and All Star spanning more than five years which inflated the price of their real

---

[1] The named plaintiffs include Matthew S. Remsnyder, Kimberly I. McMillen, Lucy Strausbaugh, Vernon and Crystal Miller, Bonnie S. Vaughn, Edward and Karen Leech, Jr., Ellen T. Geiling, Ted and Andrea Doederlein, Randall Taylor, and Edward F. and Anna M. Barth, Jr.

1

estate settlement services. *Id.* ¶ 2. Between 2009 and 2015, each of the named plaintiffs closed on a residential mortgage loan for which MBA was the lender and All Star was the settlement services provider. *E.g., id.* ¶¶ 103-04, 110-11. Under the alleged agreement, MBA was to receive kickbacks in exchange for assigning and referring residential mortgage loans to All Star for title and settlement services. *Id.* ¶¶ 23, 32.

All Star allegedly funded these kickbacks by charging MBA's borrowers excessive fees for title and settlement services amounting to nearly double what other title companies were charging for similar services. *Id.* ¶¶ 65, 76; *see* Email from M. Betley to R. Selznick, ECF 54-27. All Star's excessive fees were allegedly funneled back to MBA when All Star made payments to third-party marketing companies for MBA's marketing expenses. Am. Compl. ¶¶ 25, 27-28; *see, e.g.*, Email from R. Selznick to J. Horwitz, ECF 54-14. The plaintiffs allege that All Star's attempt to "reinvest" this money to pay for direct mail solicitations constitutes mail fraud, and was an effort to "launder" the kickbacks. Am. Compl. ¶¶ 25, 73. All told, the scheme is said to have affected more than 750 borrowers over the course of five years. *Id.* ¶ 406. According to the plaintiffs, the putative class members were overcharged in the same way as the named plaintiffs because the kickback scheme was carried out in the same way as to every MBA customer who was referred or assigned to All Star. *See* Pls.' Mem. in Supp. of Mot. for Class Cert. at 3-5, ECF 54-1 ("Mot."); Email from M. Betley to J. Horwitz, ECF 54-6; Email from M. Betley to All Star, ECF 54-7.

The plaintiffs seek to certify one overarching class and two subclasses. Mot. at 21. First, the plaintiffs define the "MBA Class" as:

> All individuals in the United States who were borrowers on a mortgage loan originated or brokered by MBA Mortgage Services, Inc., for which All Star Title, Inc., provided a settlement service, as identified in Section 1100 on the borrower's HUD-1 or on the Closing Disclosure between July 1, 2009 and December 31, 2015.

> Exempted from this class is any person who, during the period of July 1, 2009 through December 31, 2015, was an employee, officer, member and/or agent of MBA Mortgage Services, Inc. or All Star Title, Inc.; any judicial officer who handles this case, and the immediate family members of such judicial officer(s).

*Id.* The plaintiffs' two proposed subclasses are the "RICO" and "RESPA Subclasses," defined respectively as:

> The RICO Subclass is comprised of all members of the MBA class.

and

> The RESPA Subclass is comprised of all members of the MBA Class who were borrowers on a federally related mortgage loan (as defined under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2602).

*Id.*

For its part, MBA contests the plaintiffs' classification of the payments made by All Star to third-party marketing companies, contending All Star's payments were "co-marketing, which is a protected activity under RESPA's safe harbor provisions." Def.'s Resp. at 4, ECF 59. MBA also argues, contrary to the plaintiffs' allegations, there was no benefit to MBA for agreeing to purportedly inflated settlement fees under the alleged kickback agreement because, for at least 456 of the 754 loans at issue, MBA paid all of the customer's closing costs through lender credits. Michael Betley Aff. at ¶¶ 6, 9, ECF 59-1. According to MBA, "these 456 borrowers paid nothing to close their loans." Def.'s Resp. at 5. MBA also states every borrower at issue was advised in writing they could select the settlement agent of their choosing. *Id.* That is, MBA contends it never required its borrowers to use All Star for settlement services. *Id.*

The plaintiffs filed this action on February 20, 2019, originally asserting claims under RESPA, the Sherman Act, and RICO. Compl., ECF 1. On September 16, 2020, MBA filed a motion to dismiss the RESPA and RICO claims. Def.'s First Mot. to Dismiss, ECF 29. In response,

3

the plaintiffs filed an amended complaint on October 16, 2020, raising claims under RESPA and RICO only. Am. Compl., ECF 35. MBA countered with a partial motion to dismiss, attacking the sufficiency of the RICO claim. Def.'s Second Mot. to Dismiss, ECF 36. The court denied that motion. Mem., ECF 44. The plaintiffs then filed a motion for class certification on September 1, 2022. Pls.' Mot. for Class Certification, ECF 54. The matter is now ripe for resolution.

## LEGAL STANDARDS

A district court has "wide discretion" in deciding whether class certification is appropriate. *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 179 (4th Cir. 2010) (quoting *Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 185 (4th Cir. 1993)) (internal quotation marks omitted). Because "[t]he class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only,'" the court must engage in a rigorous analysis to determine whether the party seeking certification has "'affirmatively demonstrate[d] his compliance' with [Federal Rule of Civil Procedure] 23." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (citation omitted). The certification inquiry may require the court to "probe behind the pleadings," and "such an analysis will frequently entail overlap with the merits of the plaintiff's underlying claim." *Id.* at 33-34. (internal quotation marks and citation omitted). However, "Rule 23 grants no license to engage in free-ranging merits inquiries at the certification stage," and the merits may only be considered insofar as they are "relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 466 (2013).

Rule 23 sets out a two-step process for determining whether a class should be certified. First, the class must satisfy the four prerequisites of Rule 23(a): numerosity, commonality,

typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). This circuit also recognizes "an implicit threshold requirement that the members of a proposed class be 'readily identifiable,'" known as the "ascertainability" or "identifiability" inquiry. *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 654-55 (4th Cir. 2019) (quoting *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014)). If those requirements are met, the class must then satisfy at least one of the three sub-parts of Rule 23(b). *See Comcast*, 569 U.S. at 33. Here, plaintiffs move for certification by relying on Rule 23(b)(3), which "encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Advisory Committee Notes to 1966 Amendments to Rule 23*, 39 F.R.D. 69, 102-03 (1966). For class certification under Rule 23(b)(3), plaintiffs must show "that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Finally, "[a]n order that certifies a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel." Fed. R. Civ. P. 23(c)(1)(B).

## ANALYSIS

MBA does not contest that the plaintiffs have met their burden for demonstrating compliance with Rule 23(a). Def.'s Resp. at 3. Instead, MBA argues that the proposed "MBA," "RESPA," and "RICO" classes are "overly broad and overpopulated" because they include several types of putative class member who MBA argues lack standing: (1) those who received lender credits greater than or equal to All Star's title and settlement charges; (2) those for whom the loan

5

at issue never closed; (3) those who are exempted employees of MBA; (4) those for whom MBA played no role in the selection of the settlement closing agent; and (5) those for whom no HUD-1 has been located. *Id.* at 1, 3, 9.

The plaintiffs have satisfied the requirements of Rule 23 as to the entirety of the putative class and subclasses, and MBA's arguments for narrowing the classes are all either legally unavailing or evidentiarily unsupported. Class certification is therefore approved.

**I. Rule 23(a)**

MBA does not specifically contend that the plaintiffs have failed to show any of the elements of Rule 23(a). However, "the district court has an independent obligation to perform a 'rigorous analysis' to ensure that all of the prerequisites [of class certification] have been satisfied." *EQT Prod. Co.*, 764 F.3d at 358 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)). After reviewing the evidence, the court finds that the plaintiffs have satisfied Rule 23(a).

**A. Identifiability**

Rule 23(a)'s identifiability element asks whether "a court can readily identify the class members in reference to objective criteria." *Krakauer*, 925 F.3d at 655 (quoting *EQT Prod. Co.*, 764 F.3d at 358).[2] Here, determining the identities of the MBA Class and RICO Subclass members can be achieved with reference to public records, such as individuals' HUD-1 forms, to determine which borrowers obtained a loan from MBA and used All Star for title and settlement services. Mot. at 23. RESPA Subclass members can be identified by looking to public land records to

---

[2] MBA styles part of its overbreadth argument as a challenge to the class's identifiability. Def.'s Resp. at 7-8. Courts in this circuit frequently analyze the validity of a class that may include uninjured plaintiffs as part of Rule 23(b)(3)'s predominance requirement. *Krakauer*, 925 F.3d at 657. Because MBA's argument turns on standing, a legal issue, the court will analyze the question of uninjured plaintiffs as part of the predominance inquiry.

6

determine whether the loan at issue was secured through a first position lien, in addition to satisfying the two criteria for MBA Class membership. *Id.* at 23-24. As the plaintiffs point out, a list of qualifying individuals including much of the relevant identifying information already exists as part of All Star's prior recordkeeping, and MBA does not contest the veracity or utility of plaintiffs' spreadsheet. *Id.*; MBA Class Loan Spreadsheet, ECF 57-2. Because the plaintiffs already possess a list of putative class members and have proposed objective criteria for determining class membership, the identifiability requirement is met. *See Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 196-98 (E.D. Va. 2015); *Wilson v. Eagle Nat'l Bank*, Civ. No. JRR-20-1344, 2023 WL 2478933, at *10 (D. Md. Mar. 13, 2023).[3]

**B. Numerosity**

The numerosity requirement is met if "joinder of all members [of the putative class] is impracticable." Fed. R. Civ. P. 23(a)(1). A plaintiff need not demonstrate the exact size of the class: "where general knowledge and common sense would indicate that it is large, the numerosity requirement is satisfied." *Harris v. Rainey*, 299 F.R.D. 486, 489 (W.D. Va. 2014) (quoting *Mitchell-Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 556 (D. Md. 2006)). In general, "a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone." *In re Zetia (Ezetimibe) Antitrust Litigation*, 7 F.4th 227, 234 (4th Cir. 2021). The plaintiffs' proposed class would include "more than 1,100 borrowers on more than 750 transactions." Mot. at 24. Even assuming that MBA's overbreadth arguments are correct, the proposed classes would still include approximately 238 individuals. Def.'s Resp. at 9. Either way, a class of more than 200

---

[3] Unpublished opinions are cited for the persuasiveness of their reasoning only, not for precedential value.

plaintiffs renders joinder "impracticable," and Rule 23(a)'s numerosity requirement is therefore satisfied.

### C. Typicality & Commonality

Typicality generally exists when "[t]he representative party's interest in prosecuting his own case . . . simultaneously tend[s] to advance the interests of the absent class members." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). In other words, the plaintiff's claim must be sufficiently similar to the claims of the absent class members that the "plaintiff's proof of his own individual claim" will advance the claims of all of the class members. *Id.* at 467. Commonality requires that a plaintiff show "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Specifically, the plaintiffs' claims "must depend upon a common contention . . . [which is] of such a nature that it is capable of classwide resolution." *Wal-Mart*, 564 U.S. at 350. To satisfy commonality, the common question "must be of such a nature that its determination 'will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *EQT Prod. Co.*, 764 F.3d at 360 (quoting *Wal-Mart*, 564 U.S. at 350). The typicality and commonality requirements "tend to merge" because "both 'serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Soutter v. Equifax Info. Servs., LLC*, 498 F. App'x 260, 264 (4th Cir. 2012) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982)).

The plaintiffs allege a continuing kickback scheme and a scheme to defraud between MBA and All Star which allegedly operated in the same way and generated the same injury for each

putative class member. Mot. at 25; Am. Compl. ¶¶ 2, 5. The named plaintiffs' injuries are allegedly a brick in the wall of the defendant's larger scheme, and exemplify the results of MBA and All Star's alleged actions. Proving the existence and operation of the kickback scheme, and the related scheme to defraud in the case of the RICO Subclass, and that these schemes caused putative class members to pay increased prices, will be critical to the claims of every member of both the RESPA and RICO Subclasses. The named plaintiffs' claims are therefore typical of the MBA Class and RESPA and RICO Subclasses, and there is commonality between the claims of the putative class members.

### D. Adequacy

Named plaintiffs adequately represent the class if there are no conflicts of interest with other class rememebers, *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 337-38 (4th Cir. 1998), and they will "vigorously prosecute the matter on behalf of the entire class." *Baxley v. Jividen*, 338 F.R.D. 80, 89 (S.D.W. Va. 2020) (quoting *Nelson v. Warner*, 336 F.R.D. 118, 123 (S.D.W. Va. 2020)). Here, there do not appear to be any conflicts or reasons that the named plaintiffs would fail to prosecute this action vigorously, and MBA does not attempt to identify any. As explained above, the named plaintiffs have suffered effectively the same injury based on the same facts as other class members.

A second part of the adequacy inquiry asks whether proposed class counsel will "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4). In determining the adequacy of class counsel, a court must consider counsel's: (i) work on the relevant claims; (ii) experience in handling class or other complex litigation; (iii) knowledge of the applicable laws; and (iv) resources available to commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-

(iv). From the existing record in this case, proposed class counsel Michael Paul Smith, Melissa L. English, Timothy Maloney, and Veronica Nannis have done considerable work to investigate and develop the factual record of the proposed class's claims. Moreover, proposed class counsel have served as class counsel in several other factually similar class actions. *See, e.g.*, *Bezek v. First Mariner Bank*, Civ. No. SAG-17-2902 (D. Md. 2017); *Brasko v. Howard Bank*, Civ. No. SAG-20-3489 (D. Md. 2020); Decl. of Melissa L. English ¶ 11, ECF 54-49; Decl. of Timothy F. Maloney ¶ 13, ECF 54-50. Proposed class counsel also aver they have sufficient resources available to represent the class. Decl. of Melissa L. English ¶ 12; Decl. of Timothy F. Maloney ¶ 16.

Named plaintiffs and proposed class counsel will adequately represent the interests of the class, and Rule 23's adequacy requirements are therefore satisfied.

## II. Rule 23(b)(3)

Class certification under Rule 23(b)(3) requires a showing that common issues of law and fact predominate over individualized issues, and that a class action is a superior method for adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). "Rule 23(b)(3) is normally satisfied where there is an essential common factual link, such as standardized documents and practices, even though the nature and amount of damages may differ among class members." *In re TD Bank, N.A. Debit Card Overdraft Fee Litigation*, 325 F.R.D. 136, 154 (D.S.C. 2018).

### A. Predominance

The "predominance" prong of the 23(b)(3) inquiry requires that the "common questions 'predominate over any questions affecting only individual class members.'" *Amgen Inc.*, 568 U.S. at 469. Predominance can be demonstrated by showing "both that a given practice [of the defendant] was applied to all class members and that the class members are similarly situated, such

that questions about the propriety of that practice can be answered on a classwide basis." *Adair v. EQT Production Company*, 320 F.R.D. 379, 401 (W.D. Va. 2017).

The critical questions in this case will be whether a years-long course of conduct between MBA and All Star involved illegal kickbacks, and whether MBA and All Star defrauded customers to fund the kickback scheme. The plaintiffs have introduced evidence showing that MBA did in fact agree to refer customers to All Star for settlement services in return for All Star making payments to third party marketing companies on MBA's behalf. *See, e.g.*, Email from M. Betley to J. Horwitz and R. Selznick, ECF 54-31. The plaintiffs contend that this scheme affected all of the class members' mortgage loans in the same basic way, and thus proving the illegality of the scheme can be done on a class-wide basis. With regard to the primary merits of the plaintiffs' claims, then, common questions predominate over individual ones.

Nevertheless, MBA contends that these common questions will be overshadowed. Specifically, MBA argues that the plaintiffs' proposed class definitions include many putative class members who "received lender credits greater than or equal to All Star's title and closing charges" resulting in those individuals "incurr[ing] no losses." Def.'s Resp. at 3. Without a monetary loss, MBA argues that these putative class members lack standing, and that individual questions of standing will predominate. *Id.* at 8. To support its contention, MBA relies on the court's holding in *In re Marriott International, Inc., Customer Data Security Breach Litigation*, 341 F.R.D. 128 (D. Md. 2022). *Marriott* has been vacated on appeal, and the predominance analysis on which MBA relies is no longer good law. *In re Marriott Int'l, Inc.*, 2023 WL 5313006, __ F.4th __ (4th Cir. Aug. 18, 2023). Regardless, questions about standing will not predominate in this litigation.

11

The predominance analysis focuses on legal questions and not whether the number of plaintiffs who may not fit the class definition is exceedingly large. To support its theory that many putative class members suffered no economic loss, MBA has identified a single type of reimbursement, a lender credit, which MBA itself provided to putative class members. Def.'s Resp. at 9. Although the amount of the lender credit differed between putative class members, the *legal question* as to standing for each will be the same: whether the provision of the lender credit overcomes the alleged injury resulting from any overcharge in settlement fees charged by All Star. This standing question is functionally identical to the one necessary for putative class members who did not receive a lender credit, with the addition of one extra data point. *See Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 253-56 (4th Cir. 2020) (holding that the injury-in-fact necessary for a RESPA claim is an overcharge or other "increased costs that 'tend' to result from kickbacks' interference with the market for settlement services."); *Brasko v. Howard Bank*, Civ. No. SAG-20-3489, 2022 WL 951771, at *5 (D. Md. Mar. 29, 2022) ("While Plaintiffs will ultimately need to prove that each class member was injured, the fact that Plaintiffs may have been overcharged by different amounts as a result of the kickbacks at issue neither destroys their standing nor the predominance of the common legal and factual issues related to their claims."). Moreover, it appears that no additional individualized discovery or factual development will be required as part of the standing inquiry: the amount of each putative class member's lender credit is already known and appears on each borrower's HUD-1. Pls.' Reply at 6, ECF 61; *see* Def.'s Resp. at 8. The fact that some borrowers received lender credits while others did not does not undermine the predominance of common legal and factual issues.

12

The defendant's argument, though couched as a challenge to various elements of the certification inquiry, is more plainly understood as a full-frontal attack on certain class members' standing on the merits. In a class action suit, courts in this district "apply the pleading stage burden to analyze . . . standing" at the certification stage. *Wilson*, 2023 WL 2478933, at *5. To meet that burden, the plaintiffs must provide sufficient "plausible allegations, taken as true . . . to meet Article III standing." *Id.* at *5 (quoting *Overbey v. Mayor of Balt.*, 930 F.3d 215, 227 (4th Cir. 2019)). Furthermore, in a class action, standing is "based on the allegations of personal injury made by the *named plaintiffs*." *Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017) (emphasis added). Accordingly, for class certification at the pleading stage, the named plaintiffs "are not obliged to demonstrate that every putative Class member has standing."[4] *Wilson*, 2023 WL 2478933, at *9 (citing *Dreher v. Experian Info Sols., Inc.*, 856 F.3d 337, 343 (4th Cir. 2017)). MBA does not specifically take issue with the named plaintiffs' standing. *See* Def.'s Resp. at 3. And the named plaintiffs have alleged and provided facts to show that they were overcharged for title and settlement services by All Star. *See* Named Pls.' HUD-1 Forms, ECF 54-36, 54-37, 54-38, 54-40, 54-42, 54-43, 54-45, 54-46, 54-48; Email from R. Selznick to Eagle Nat'l Bank, ECF 54-23 (describing fee structure of $1,000 for non-marketing agreement referrals). That is enough

---

[4] Even if the named plaintiffs were required to show that every, or at least the vast majority of, putative class members had standing at this stage of the litigation, they have done so. Though many putative class members received lender credits, some of which were equivalent to or greater than the cost of their title and settlement fees, they still have alleged an injury based on an overcharge. MBA does not argue or provide evidence to show that the lender credits were intended to reimburse borrowers for title and settlement fees in particular, as opposed to the overall closing costs, of which title and settlement fees are a part. *See, e.g.*, Remsnyder HUD-1 at Lines 1101, 1400, ECF 54-36. To the extent that putative class members would have received a lender credit of the same value even without being overcharged by All Star, they have alleged an overcharge injury sufficient for standing.

13

to demonstrate standing at this stage of the litigation. *See Bezek v. First Mariner Bank*, Civ. No. SAG-17-2902, 2020 WL 5877159, at *4 (D. Md. Oct. 2, 2020).

The same analysis applies equally to MBA's other groups of putative class members. The plaintiffs' burden at this stage of the litigation is to demonstrate that the named plaintiffs have standing, and that individualized questions as to the standing of putative class members will not predominate. None of the other standing issues identified by MBA will predominate. The loans that allegedly (1) never went to closing; (2) were not referred by MBA to All Star; or (3) for which no HUD-1 has been identified make up a total of 58 of the more than 750 loans at issue.[5] Def.'s Resp. at 9. And the plaintiffs have adequately demonstrated that at least some of the issues identified by MBA are not, in fact, true. *See* Pls.' Reply at 17-20. Given the small number of putative class members at issue and the relative ease with which these factual disputes can be resolved, the individualized factual and legal issues associated with these putative class members will not predominate. To the extent that MBA's contentions are direct merits challenges to the standing of these putative class members, they are premature.

Of course, none of this is to say that any of the named plaintiffs or putative class members were in fact overcharged by All Star, or that any such overcharge is traceable to MBA. It is the plaintiffs' burden to introduce evidence sufficient to prove these contentions at trial, and MBA is free to challenge the claims of certain class members then, or in a motion for summary judgment. But at this stage, the named plaintiffs have sufficiently alleged standing and shown that

---

[5] The three loans identified by MBA as being made to its employees are already exempt under the plaintiffs' own class definition. Def.'s Resp. at 9.

individualized questions as to the standing of putative class members will not predominate. That is enough. *Brasko*, 2022 WL 951771, at *4; *Bezek*, 2020 WL 5877159, at *4.

### B. Superiority

Under Rule 23(b)(3), the court must also determine that a class action is superior to other methods for adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). Considering the same factors which supported findings of commonality, typicality, adequacy, and predominance, the court finds that a class action is the most efficient means of resolving the hundreds of claims arising from the alleged kickback agreement between MBA and All Star. *See Brasko*, 2022 WL 951771, at *8; *Bezek*, 2020 WL 5877159, at *7.

### III. Class Definition

Rule 23(c)(1)(B) requires that the court define the class. MBA proposes revisions to the plaintiffs' MBA Class definition, asking that the redefined class include only individuals who "closed and incurred a monetary loss (as reflected in the borrowers' HUD-1) on a federally related mortgage loan" and "for which MBA Mortgage Service, Inc. was involved in the customer's selection of the settlement agent for closing." Def.'s Resp. at 10. As the plaintiffs correctly point out, MBA's revisions only serve to inject required elements of the plaintiffs' claims into the class definition such that "whether a person qualifies as a member depends on whether the person has a valid claim." *EQT Prod. Co.*, 764 F.3d at 360 n.9. As explained above, the plaintiffs need not prove the standing of all putative class members at this stage of the litigation, and the class definition should not be limited to absolutely require putative class members to have standing. It will be the plaintiffs' burden to show that putative class members selected All Star for title and settlement services, and therefore incurred an overcharge (if that is also proven), due to MBA. *See*

12 U.S.C. § 2607(a); *Lujan*, 504 U.S. at 560 ("The injury has to be fairly traceable to the challenged action of the defendant.") (internal alterations omitted). Including these elements in the class definition would create an improper "fail safe" class, and the court therefore declines to adopt MBA's revisions. *See EQT*, 764 F.3d at 360 n.9. The plaintiffs' proposed class definitions are satisfactory, and mirror those approved in other class actions alleging similar courses of conduct. *See, e.g.*, Class Certification Order, *Brasko*, Civ. No. SAG-20-3489 (D. Md. Mar. 29, 2022), ECF 47. Therefore, the plaintiffs' proposed definitions will define the MBA Class and RICO and RESPA Subclasses.

## CONCLUSION

For the reasons stated above, the plaintiffs' motion for class certification is **GRANTED**.

A separate order follows.

_____9/6/2023_____  
Date

_____/s/_____  
Catherine C. Blake  
United States District Judge